[Civ. No. 5312.   Fourth Dist.   Apr. 9, 1956.]

B. L. LUNSFORD et al., Respondents, v. J. F. KOSANKE, Appellant.

Siemon & Siemon for Appellant.

Vizzard, Baker & Sullivan for Respondents.

CONLEY, J. pro tem.*—The defendant appeals from a judgment for the plaintiffs in the sum of $9,000 besides interest and costs, on a contract for the assignment of their interest in an oil lease and sublease, and the transfer of title to the oilfield equipment used in operating the property. The principal point raised on appeal is that the issues became res judicata because of an earlier action tried in the same department of the court before the same judge, between the same parties represented by their present attorneys. Although the appellant then prevailed on his claim that there could be no decision on the merits because the pleadings were insufficient, he now as firmly maintains that the earlier judgment was actually on the merits, and even if erroneous, prevents any recovery in the instant suit.

The essential facts are simple against a rather complex background. The plaintiffs had an interest in oil property derived from a United States oil and gas lease originally held by Exeter Oil Company which had made an operating agreement with one Johnson (not one of the parties here) who in turn assigned his rights to Chico-Martinez Oil Company. The latter partnership made an agreement to sell its remaining rights to one Pruitt, who, in turn, agreed to sell to the plaintiff J. Dykes Johnson. At the time of the inception of business relations between the parties to this action the plaintiffs had not perfected their paper title to the lease, the Exeter Oil Company claimed a small balance as due to it, and the Chico-Martinez Oil Company had not made a formal assignment of its rights while awaiting the payment of a balance.

A written "mutual agreement" dated March 22, 1951, was executed by the parties; it was a "home-made contract" which appears in form to be an option, but which both sides term an agreement in their pleadings, granting to the defendant the right to purchase the L & J Company lease and sublease and its oilfield equipment for $10,000, of which $1,000 was to be cash ($500 down and "$500 at the time escrow is closed") and $9,000 payable out of the income from 30 per cent of oil, "but in any event $4,500 in the first year and $4,500 the next year"; the document continues with the provision

*Assigned by Chairman of Judicial Council.

that the L & J Company will assign their interest in the oil lease and sublease to the defendant, subject to Government regulations and the provisions contained in the documents, through an escrow with one of their attorneys. The receipt of $500 is acknowledged and "the balance of $500.00 to be paid when the papers are transferred and o.k.'ed." All oil in tanks owned by the plaintiffs was to be removed and a bill of sale was to be given for all the equipment "such as pipe lines, pipe, heating units, pumping units, etc." Shortly afterwards, according to plaintiffs' allegations, the defendant exercised the option and waived the necessity of securing a transfer of the lease and sublease rights from the plaintiffs, accepting instead a direct transfer of the rights from Exeter and Chico-Martinez to him, and also waived the setting up of the escrow and the execution of a bill of sale; at that time defendant paid the second $500 provided for in the agreement of March 22, 1951. It is alleged also by plaintiffs that a bill of sale covering all of the personal property was nevertheless finally executed by plaintiffs; the court finds that such an instrument was prepared and signed, but that it was not actually delivered until the day following the filing of the complaint in this case. The oilfield equipment was admittedly promptly delivered to the defendant in March or April of 1951, and the record shows that it has been used by him or under his direction ever since. In July of 1953, the defendant executed an operating agreement and option to purchase in favor of one James L. Garliepp, who has used the equipment in operating the lease and before the trial of the first case had paid about $4,000 to the defendant on the contract.

The defendant contends that a certain writing dated April 11, 1951, in form a letter from Kosanke to L & J Oil Company, was in fact a modification of the "mutual agreement" of March 22, 1951; plaintiffs say that the letter was received but never accepted by them as a modification of the contract, and the court by its finding determines plaintiffs' position thereon to be correct.

The first action, filed September 30, 1952, alleged that the plaintiffs sold to defendant by contract dated April 11, 1951, oilfield equipment at an agreed price of $10,000, on which a balance of $9,000 was due; in a supplemental complaint it was averred that the agreement in writing for the sale of this personal property was dated March 22nd, 1951. The answer and amended answer to complaint and answer to supplemental complaint denied that any sum was due; alleged as separate

defenses that the provision for the sale of oilfield equipment constituted only part of the contract between the parties, and that plaintiffs had failed to complete the assignment of the oil lease, which the agreement also provided for; that plaintiffs never acquired title to any oil lease so that they could transfer it; that no escrow was ever set up as provided in the contract of the parties; that the letter of April 11, 1951, was a modification of the March 22 contract; and that its terms which would control the relationship of the parties were not complied with.

The first case was tried December 28, 1953, and findings of fact and conclusions of law filed June 25th, 1954, with a judgment that plaintiff take nothing and that defendant be awarded his costs.

The doctrine of res judicata is dictated by the wisdom of eliminating needless and repetitive calls upon our law courts. The dignity and seriousness of the judicial process, and the necessity of preventing any harassment of litigants, require that reasonable restrictions be placed on the right to submit any one controversy between specific parties to our courts of justice. A party plaintiff or defendant is entitled to his day in court; if he raises a question as to the respective rights of another person and himself he deserves, and will get, his answer; but once having secured a final determination of his right, he cannot again ask the court to redecide the same question on its merits. He cannot split his cause of action, or have his case decided piecemeal. He is bound, as is his opponent, by the decision on its merits, as well with respect to the questions which might have been raised in the case as by the questions expressly decided.

As is said in *Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636, 637 [134 P.2d 242]:

"The doctrine of res judicata rests upon the ground that the party to be affected, . . . has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation."

The doctrine of res judicata if applicable to a given case extends the bar of subsequent litigation not only to issues pleaded but also to those that might have been pleaded (*Steiner* v. *Thomas,* 94 Cal.App.2d 655, 659-660 [211 P.2d 321]; *Watkins* v. *Watkins,* 117 Cal.App.2d 610 [256 P.2d 339]; *Sutphin* v. *Speik,* 15 Cal.2d 195, 202 [99 P.2d 652, 101

P.2d 497]), and an erroneous judgment, under the doctrine, is as conclusive as a correct one (*Panos* v. *Great Western Packing Co., supra,* 21 Cal.2d 636, 640; *People* v. *Ocean Shore R., Inc.,* 32 Cal.2d 406, 418 [196 P.2d 570, 6 A.L.R.2d 1179]; *Stafford* v. *Yerge,* 129 Cal.App.2d 165, 172 [276 P.2d 649]; *Lamb* v. *Wahlenmaier,* 144 Cal. 91, 95 [77 P. 765, 103 Am.St.Rep. 66].)

*Dillard* v. *McKnight,* 34 Cal.2d 209, 214 [209 P.2d 387, 11 A.L.R.2d 835], lays down the following rule to test the applicability of the doctrine:

". . . the application of the principle of res judicata in a given case depends upon an affirmative answer to these three questions: Was the issue decided in the prior adjudication identical with the one presented in the subsequent litigation? Was there a final judgment on the merits? Was the party against whom the principle is invoked a party or in privity with a party to the prior adjudication?" (*Bernhard* v. *Bank of America,* 19 Cal.2d 807, 813 [122 P.2d 892]; *Citizens Nat. Trust & Sav. Bank of L. A.* v. *Hawkins,* 87 Cal.App.2d 535, 541 [197 P.2d 385]; *Zaragosa* v. *Craven,* 33 Cal.2d 315, 317 [202 P.2d 73, 6 A.L.R.2d 461]; *Hughes* v. *Bank of America,* 78 Cal.App.2d 631, 636 [178 P.2d 533].)

Here the first and third questions must be answered in the affirmative; in other words, if there had been a trial and decision on the merits in the first case, the plea of res judicata would have to be upheld; but at the trial of the first case there was no final judgment on the merits. This conclusion is based on the fact that the trial judge held in the first case that the complaint was so defective that no evidence could be received under it. A judgment not rendered on the merits does not operate as a bar. (*Goddard* v. *Security Title Ins. & Guar. Co.,* 14 Cal.2d 47, 52 [92 P.2d 804]; *Gonsalves* v. *Bank of America,* 16 Cal.2d 169, 172 [105 P.2d 118]; *Campanella* v. *Campanella,* 204 Cal. 515 [269 P. 433]; 2 Freeman on Judgments [5th ed.], § 723, p. 1530.)

Another consideration leading to the conclusion that defendant's plea of res judicata cannot be sustained is that he himself induced the ruling that no evidence was admissible under the pleadings in the first case. Our courts have in appropriate situations weighed the motions and objections of counsel in a former action to determine whether a contradictory stand was later assumed, and the general principle has been applied that one cannot take inconsistent positions to the injury of an opponent. Thus, where a party litigant success-

fully blocked the attempt of its opponents in an earlier case to amend their pleading and consolidate with another pending action to include certain issues, and later contended that such issues were res judicata because they might have been adjudicated in the earlier case, the Supreme Court in *United Bank & Trust Co.* v. *Hunt*, 1 Cal.2d 340, 345 [34 P.2d 1001], held that ''Litigants can not successfully assume such inconsistent positions'' and treated the situation developed in the first trial as ''. . . tantamount to an express determination on the part of the court with the consent of opposing counsel to reserve the issues involved for future adjudication.'' Again, in *Corona Inv. Co.* v. *Riedman*, 11 Cal.App.2d 648 [54 P.2d 85], when a party in a quiet title action involving an oil lease sought to make an issue of title to the casing as well, and the move was successfully defeated, the opposing parties could not later claim the question was res judicata; for, said the court, ''. . . They prevented plaintiffs' attempt to have the present issue determined in the former action and now inconsistently seek to have the court declare that the entire controversy, including the present issue, was in fact adjudicated in the former action.'' In *Stockwell* v. *McAlvay*, 10 Cal.2d 368 [74 P.2d 504], it was held that one who prevents the adjudication of an issue in an earlier trial by successfully demurring and moving to strike a portion of the pleading tendering the issue cannot later successfully assert that the issue is res judicata because it might have been determined in the earlier case.

Appellant in the first action repeatedly and consistently stressed his position that under the pleadings as they stood no relief could be granted; he asked at the outset for a continuance so that plaintiffs could amend their complaint because, as he said, plaintiffs showed by their opening statement they could not recover on their pleadings; counsel objected to the introduction of any evidence ''upon the grounds that the pleadings here do not permit any proof'' of the entire claim as outlined in the opening statement, or of facts explaining any existing ambiguity or of any modification of the contract as pleaded; ''in the long run it probably would not result in any delay, because we are serious about these objections.'' The court took these basic objections under advisement and after the trial sustained them and held that because of the defective complaint no evidence whatsoever was admissible.

During the trial counsel objected to an offer of evidence relative to oral communications between the parties ''on the ground that it is either offered for the purpose of showing

a modification of the agreement, or an excuse for performance, but neither one has been pleaded here.'' Later, counsel interposed an objection to testimony on the ground that ''It would be a modification. They have not pleaded a modification,'' and argued that all that was pleaded was the sale of personal property and that there was nothing pleaded with respect to an assignment of a government oil lease; counsel said ''We are certainly trying a case without any pleadings . . . Why ask a question that is not permissible under the pleadings . . . You cannot rely upon an ambiguity in the instrument unless you make a pleading to that effect, and then you can put on evidence to explain the ambiguity. . . . Now, they have counted on the written agreements and that is the basis of this suit here. That is why I thought they should back up and amend their complaint and be in Court on both feet . . . This is a complicated case and should be pleaded. If you are going to get this case in the record here the way it is presented, you have no pleading here . . . The statute of limitations has not run on this yet, if there is a contract . . . I think Mr. Vizzard is a good enough lawyer to know he cannot do what he is trying to do. He has plenty of time and we will agree to his amending his pleading.'' In connection with the testimony of the witness Garliepp, counsel for the appellant made the objection ''One objection I want to make to that is that this is a matter of a cause of action they are relying on that is not pleaded.'' At the close of the plaintiffs' case, counsel for defendant rested without producing any evidence, saying: ''I am going to stand on this pleading. I would like a chance to file a memorandum.''

The memorandum was evidently convincing, for the trial judge determined that plaintiffs' pleadings were insufficient to permit the reception of any evidence, holding:

''The Court further specifically finds that plaintiffs herein failed to plead in their complaint and supplemental complaint that the contract of March 22, 1951 had been performed by them, or that said performance by them had been excused either by pervention thereof by defendant, or by any waiver thereof by defendant, and that all testimony taken in this action thereby became inadmissible and could not be considered by the Court.''

And as a conclusion of law the court said:

''1. That the plaintiffs are not entitled to recover against defendant on account of the evidence being offered by plaintiffs as to any performance of their contract by them, or

any waiver or prevention of said performance, being inadmissible by reason of plaintiffs' having failed to plead the same in their complaint and in their supplemental complaint.''

And, now, with his victory won in the first case, appellant claims res judicata of the very questions which he prevailed upon the court not to consider because of the defective pleading.

■ As was said in 30 American Jurisprudence at page 944:

". . . . a defendant who succeeds in defeating an action on the ground that the pleadings do not warrant a recovery on the facts proved is estopped in a second action, based on the theory successfully asserted by the defendant in the earlier action, to insist that the latter action is barred by the former judgment because the matter might properly have been settled in the former action.'' (See also *Leonard* v. *Schall*, 132 Minn. 446 [157 N.W. 723, 4 A.L.R. 1166]; *Hall* v. *Coyle*, 38 Cal.2d 543, 546 [241 P.2d 236].)

But what is the effect of the trial court's purported complete set of findings in the first case, in view of its final holding that the pleadings are fatally defective and that no evidence was admissible under them? It is clear that such findings on the issues made by the pleadings should not have been made at all, and that the court should have announced his view of the pleadings by a minute order sustaining the objection of counsel for the defendant to the admission of any evidence followed by an order of dismissal. Certainly no findings were necessary. ■ As was held in *Colver* v. *W. B. Scarborough Co.*, 73 Cal.App. 421, 432 [238 P. 1096], a ruling sustaining an objection to the reception of all evidence is equivalent in its effect to an order granting a motion for nonsuit and findings are unnecessary in either event. (*Flynn* v. *Flynn*, 103 Cal.App.2d 91, 96 [229 P.2d 5].) The same rule is applicable to any similar situation where no evidence is actually admitted, such for example as an order granting a motion for judgment on the pleadings. (*Bradley Co.* v. *Ridgeway*, 14 Cal.App.2d 326, 330 [58 P.2d 194].) ■ But, as certainly, the unnecessary and void ''findings'' did no harm and may be treated as surplusage. For respondents' counsel in the present suit specifically repudiated any idea that they were binding on either party, stating during the course of the trial ''. . . if Your Honor rules against Mr. Siemon's affirmative defense I don't think we could say . . . in this prior case you made certain findings and

we submit the case on those findings and say those are the facts of the case and the defendant is bound by those facts.'' The answer to the question is that these additional findings as to the issues made by the pleadings in the first case were wholly ineffective and surplusage in view of the specific and controlling ruling of the court that because of major defects in the pleading no evidence was admissible and the general objection to the evidence was sustained. Obviously, with no evidence before it, the court was in no position to find on any issue of fact.

With the claim of res judicata thus disposed of, it appears that little of substance remains of appellant's case. In his closing brief, he undertakes a detailed survey of the findings; many of the criticisms are obviously captious and unsound. For example, objection is made that the court found the writing of March 22, 1951, to be an agreement rather than an option, although both parties in their pleadings term it an agreement; it is objected that the oral waivers did not occur under the evidence on the specific date April 6, whereas the findings say ''on or about April 6''; the contradiction in the findings by reference to the pleadings in saying at one place that the bill of sale was delivered prior to the filing of the complaint and at another place one day after is not fundamentally important. ▆ The finding that there was not another action pending is subject to the criticism that it should more fully state the facts as of the time when the present suit was filed. But an error of this kind certainly would not warrant a reversal. (*Collins* v. *Ramish,* 182 Cal. 360, 367 [188 P. 550].) Other objections to the findings have their source in the rather vague evidence produced by each side with respect to some of the details of the transactions involved. However, we are satisfied from an inspection of the record that the trial court had before it substantial evidence which either directly or by legitimate inference sustained the court's basic findings as made. ▆ References to one or two of the principal findings as tested by applicable legal principles show, for example, that there may be a waiver by a party of the provisions of a contract inserted for his benefit (*Gilmore* v. *Hoffman,* 123 Cal.App.2d 313, 320 [266 P.2d 833]), and that the trial court had substantial evidence on which to base its finding that the defendant waived the term of the agreement of March 22 which provided for an escrow to insure good title on a transfer of the lease rights to him by plaintiffs, in favor of a direct

transfer of rights from Exeter and Chico-Martinez; going into possession of the property covered by the oil lease and of the oilfield equipment, was some evidence of the practical construction by the defendant of the completed contract (*Work* v. *Associated Almond Growers*, 102 Cal.App. 232, 235 [282 P. 965]), as was the turning over by defendant of the lease and personal property to the proposed purchaser, Garliepp. It is argued that perhaps there may be defects in defendant's title, but the answer to that is that defendant accepted the substituted performance of transfers directly from Exeter and Chico-Martinez and thereupon paid his second $500; that was the time for him to be sure he was satisfied with the deal as modified by the waivers, and he apparently was. In short, it appears to this court that Kosanke received all that plaintiffs agreed to sell him, that the trial court had ample warrant for all of its material findings, and that no error in connection with the decision in justice or in common sense would require or justify a reversal.

The judgment is therefore affirmed.

Barnard, P. J., and Mussell, J., concurred.