No. 19,853.

ALBERT JOHNSON *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(367 P. [2d] 896)

Decided December 18, 1961. Rehearing denied January 29, 1962.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, ATTORNEY GENERAL, Mr. FRANK
E. HICKEY, DEPUTY, Mr. J. F. BRAUER, ASSISTANT, for de-
fendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as defend-
ant, is here on writ of error to review a judgment entered
upon the verdict of a jury finding him guilty of the
crime of aggravated robbery.

The facts, which are not in dispute, are as follows: About 9:30 A.M. on September 8, 1958, the proprietor of a pharmacy in Denver was in the store's prescription room using the telephone when he saw two men enter the store. One of the men, after partly covering his face with a mask on his way through the store, came up to the owner, pointed a gun at him, and told him that he was a sick man and wanted narcotics and that the owner better not waste any time. After handing the gunman one partly filled bottle of morphine tablets and a second bottle with eight one-half grain dilaudid tablets, the owner carried out the next command, which was to open the safe. While all of this was going on, the other of the two gunmen was holding a gun on a clerk and a customer near the front of the store. The two robbers then collected, in addition to the narcotics, cash and checks of the total value of $5,000.00, and numerous unwritten money orders, tore the phone off the wall, and left.

All of the above was presented during the prosecution's part of the case. Both the customer and the clerk who were in the store at the time of the robbery gave a positive identification of defendant as the one who actually brandished the gun on the drug store owner and collected the loot, while the second of the two gunmen was keeping guard near the front of the store.

Defendant denied participation in the holdup and stated that at the time the offense was committed he was, "at the Voters Club with a lady friend whom I happened to be going with"; that he had agreed to help her clean up a grill used to fry hamburgers and was there for that purpose; that "she had a little portable radio up on a shelf and we were conversing, and it came over the news that a robbery had been committed in that vicinity."

Defendant was the only witness called by the defense. On cross-examination he testified as follows:

"Q. All right. Now, you say you had nothing to do

with this robbery? A. I most certainly didn't. Q. And you would also tell us, I assume, that you had nothing to do with delivering threats to the witnesses in this case; is that right?"

Defense counsel immediately objected on the ground that the above question constituted improper cross-examination. The court agreed that the question was improper, ordered it stricken, and instructed the jury at that time, and again in the final charge, to absolutely disregard the stricken matter. However, the defendant's motion for a mistrial was overruled. Defendant now claims that the attempted cross-examination was so highly improper and prejudicial that the court's instructions to disregard it could not possibly have been effective and that the denial of the motion for a mistrial amounted to a denial of his constitutional right to a fair trial.

 There is no merit in this argument. While the form of the question to which objection was made cannot be approved, the substance of the matter to which the question referred could very well have been proper as laying a foundation for subsequent impeachment of defendant on a material matter. If in fact defendant had threatened a witness in the case, the prosecutor could specifically direct his attention to the matter constituting the alleged threat and require him to either admit or deny it. If defendant admitted the threat it could be considered by the jury as bearing upon the credibility of his claim of innocence. If he denied the threat the district attorney could establish by competent evidence that the threat was made and the effect thereof would be for the determination of the jury as bearing upon the credibilty of his claim of innocence. It is always relevant to show that a defendant in a criminal case manufactured or fabricated evidence, or by any means attempted to suppress testimony which might adversely affect him.

In the instant case the defendant was not prejudiced by the action of the trial court in sustaining the objection

made by his attorney. There was ample evidence to sustain the verdict of the jury and the judgment of the trial court entered thereon is affirmed.

MR. CHIEF JUSTICE HALL specially concurs.

MR. CHIEF JUSTICE HALL specially concurring:

I concur in the affirmance of the judgment and subscribe to the reasoning expressed in the majority opinion, that though it was improper for the district attorney to ask the defendant the question:

"Q. And you would also tell us, I assume, that you had nothing tc do with delivering threats to the witnesses in this case; is that right?," the court having sustained an objection thereto, ordered the same stricken, and in its final charge instructed the jury to absolutely disregard the stricken matter, the defendant's rights were not prejudiced.

I do not subscribe to that portion of the opinion holding that the matter of the defendant's suggested threatening of witnesses was a proper subject for cross-examination.

As applied to the facts as outlined in the majority opinion, I take particular exception to the following language contained in the majority opinion:

"* * * It is always relevant to show that a defendant in a criminal case manufactured or fabricated evidence, or by any means attempted to suppress testimony which might adversely affect him."

In this case the district attorney offered no evidence of any of these matters. I agree that he could have done so — not to prove anything that happened at the time or place of the alleged offense, but to prove a subsequent consciousness of guilt.

The prosecution has offered no evidence of threatening witnesses — the defendant had said nothing on the subject, confining himself to his activities at the time of the alleged offense.

Neither the prosecution nor the defendant had placed in issue the question of threats. Just how one can be *cross-examined* upon matters on which no one has been *examined* is to me not entirely clear.

The prosecution could, and had it considered the matter relevant should, have offered evidence of the threats. In such case its witnesses could be cross-examined. Then had the accused seen fit to deny the charge he could have been cross-examined. To be subjected to *cross-examination* presupposes *examination*.

The object of cross-examination is to test the correctness of matters in evidence. 98 C.J.S., Witnesses, §372:

"The office of cross-examination is to test the truth of statements of a witness made on direct examination. Cross-examination serves as a safeguard to combat unreliable testimony, providing a means for discrediting a witness' testimony, and is in the nature of an attack on his truth or accuracy. The purpose of cross-examination, however, is not limited to bringing out a falsehood, since it is also a leading and searching inquiry of the witness for further disclosure touching the particular matters detailed by him in his direct examination, and it serves to sift, modify, or explain what has been said, in order to develop new or old facts in a view favorable to the cross-examiner. The object of cross-examination, therefore, is to weaken or disprove the case of one's adversary, and break down his testimony in chief, test the recollection, veracity, accuracy, honesty, and bias or prejudice of the witness, his source of information, his motives, interest, and memory, and exhibit the improbabilities of his testimony."

An orderly trial of a criminal case requires that the prosecution present such evidence as it may have and wish to rely upon to establish the defendant's guilt; that the defendant then present such matters as he may choose to weaken or destroy the prosecution's evidence and such other affirmative matters as he may wish to

present; that the prosecution then be given full opportunity to rebut any new matter.

To sanction the conduct of the prosecution in this case in withholding evidence tending to show defendant's consciousness of guilt, and then seeking to present the matter through the back door under the guise of cross-examination, does not lend itself to the orderly adjudication of matters to be resolved.

If procedures sanctioned in the majority opinion are followed, then the defendant, compelled to inject a new issue into the case, is denied the right to refute or rebut the prosecution's testimony on the issue so injected.