444 P.2d 428

The STATE of Idaho, Plaintiff-Respondent,
v.
Edward ROLFE, Defendant-Appellant.
No. 10118.

Supreme Court of Idaho.
July 8, 1968.
Rehearing Denied Sept. 10, 1968.

Robert E. Bakes, Boise, John R. Black and ·Max F. Parrish, Pocatello, for appellant.

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., Boise, Hugh C. Maguire, Jr., Pros. Atty., for Bannock County, Pocatello, for respondent.

SPEAR, Justice.

On April 4, 1967, defendant and appellant herein, Edward Rolfe, was charged by Information with the crime of statutory rape, alleging that he did "knowingly, wilfully, unlawfully and feloniously have and accomplish an act of sexual intercourse with and upon one * * *, then and there a female under the age of eighteen (18) years, and of the age of fifteen (15) years, who was not then and there the wife of said defendant Edward Rolfe."

Trial was commenced on July 5, 1967, and resulted in a jury verdict finding appellant guilty July 10, 1967. On July 24, 1967, appellant was sentenced to be confined in the State penitentiary for life.

Appellant raises several assignments of error concerning procedural and evidentiary matters which, he contends, whether viewed separately or cumulatively, deprived him of his right to a fair trial. These assignments will be discussed in the order charged by appellant.

### (1) Motion for Change of Venue

Initially, appellant contends that the court erred not only in denying his motion for a change of venue, but also in allowing him just 24 hours to prepare and present proof in support of the motion.

On May 2, 1967, appellant appeared before the district court for arraignment.

Counsel for appellant requested additional time within which to enter his plea and

advised the court that a motion for change of venue would be forthcoming, which motion he would like to have considered prior to the entering of his plea on the arraignment. The trial court allowed counsel 24 hours in which to answer the Information pursuant to I.C. § 19–1516. On May 3, the following day, counsel filed his motion for a change of venue together with several newspaper articles and the supporting affidavits of Edward Rolfe and 18 other persons representative of the community at large to the effect that appellant could not receive a fair and impartial trial in the southeastern Idaho area.

Mr. P. A. McDermott, the deputy prosecuting attorney for Bannock County, Idaho, thereafter filed a motion in opposition to a change of venue alleging that there remained 18,668 qualified electors eligible for jury duty in this case in Bannock County and that none of the affiants listed by appellant had been selected to serve on the present jury panel in this case.

The trial court's memorandum decision and order filed on May 8, 1967, denying appellant's motion, states in part that:

"Upon the face of it it doesn't appear that the defendant cannot have a fair and impartial trial here in Bannock County. If at the time of trial it is revealed by examination on voir dire that there is a prejudice existing which would prevent the defendant from having a fair and impartial trial, the Court will then consider the question of change of venue."

In the recently decided case of State v. Cypher, 92 Idaho 159, 438 P.2d 904 (1968), this court held that refusal to grant a change of venue will not result in the reversal of a conviction where it appears that the defendant had a fair trial and that no difficulty was experienced in securing a jury.

There is no evidence in the record to suggest that appellant experienced any difficulty in selecting an impartial jury. Thus,

"Under the well settled rule, it is not sufficient merely to show that prejudice exists against the accused; it must appear that the prejudice against him is of such magnitude as to prevent him from receiving a fair and impartial trial; and where the evidence before the court is conflicting, its decision will not be reversed upon appeal." (State v. Cypher, 438 P.2d at p. 911)

Nor is there any evidence to support appellant's contention that he was prejudiced by the trial court's allowing him only 24 hours in which to enter his plea. Counsel did not raise this issue at the time of the ruling nor did he attempt to produce additional information in support of his motion which the trial court could consider during the voir dire examination. This contention is without merit.

(2) *Alleged Misconduct by Deputy Prosecuting Attorney*

(a) *Motion to Produce*

On June 14, 1967, counsel for appellant filed with the court a motion to produce "requiring the Prosecuting Attorney to produce all evidence, records, interviews, statements and any and all other information available to the prosecution in the above entitled case," which motion was granted.

During oral argument before the court (June 15th) on this motion, Mr. McDermott stated that the State was not possessed of any information which appellant's counsel did not already have at his disposal. During the trial witness Hollingsworth testified that he had previously been interviewed at the prosecuting attorney's office wherein a tape recording was made of his statement concerning appellant's attempted bribery. However, witness Leaman, Hollingsworth's mother, testified that she had advised counsel for appellant of the attempted bribery over the telephone in February.

Counsel for appellant therefore had substantial knowledge as to what the testimony of this witness would be. Furthermore, it

**470**

appears from the record that counsel knew of this tape recording as far back as March, 1967, but did not request to hear it at any time.

In view of these facts it was incumbent upon defense counsel to follow up the advantage afforded him under the court order to produce by specifically requesting to hear this tape available to him at the prosecuting attorney's office. People v. Garner, 57 Cal.2d 135, 18 Cal.Rptr. 40, 367 P.2d 680 (1961); cert. denied 370 U.S. 929, 8 L.Ed.2d 508, 82 S.Ct 1571 (1962); Drozewski v. State, 84 So.2d 329 (Fla.1955). Counsel cannot now be heard to complain that his omission deprived him of the opportunity to obtain this information and resulted in prejudicial error.

(b) *Interview of Witnesses*

■ In conjunction with his motion to produce, counsel also argued before the court (June 15th) that he had the right to interview those witnesses the State intended to produce at trial. During the colloquy that followed the trial court reaffirmed defense counsel's position to the effect that he had every right to talk to these witnesses if they so desired and that just because they were the State's witnesses didn't mean they would be isolated from the defense. The court added that it might be a little more orderly if Mr. McDermott would make the arrangements to set up an interview at his office between the witnesses and defense counsel because otherwise they probably would not want to speak with counsel.

But the court was also specific in not limiting counsel's right to contact the witnesses on his own initiative as disclosed in the record as follows:

"THE COURT: That's right. But what I mean to say is I am not restricting your activities. You can dig up the evidence any way that you can. If they want to talk to you, say anything to you, that is their business. If they don't want to, they don't have to * * *"

Thereafter counsel received a letter from Mr. McDermott stating that he had contacted the witnesses but that they did not wish to discuss the case with him; hence there would be no arrangements made for an interview at his office. During the course of trial it was adduced that Mr. McDermott had not contacted two of the minor witnesses directly but had, instead, contacted their parents whom, he felt, could speak for them in view of their age. Moreover, it appeared that Mr. McDermott had not clearly advised the witnesses that the contemplated interview would take place at the prosecutor's office.

However, in light of the trial court's explicit statements leaving counsel unhampered in his efforts to interview the witnesses we find that the course actually pursued did not result in any prejudicial error to appellant.

(3) *Testimony on Attempted Bribery*

■ Over defense counsel's objections the trial court permitted testimony to the effect that appellant had offered witness Hollingsworth a sum of money if he would testify that he had taken the prosecutrix home on the night of the alleged crime. We find no error in this ruling.

■ It has long been held in Idaho (State v. Marren, 17 Idaho 766, 107 P. 993 (1910)) as well as in numerous other jurisdictions (22A C.J.S. Criminal Law § 633, p. 480; State v. Sowards, 99 Ariz. 22, 406 P.2d 202 (1965); State v. Russell, 62 Wash. 2d 635, 384 P.2d 334 (1963); Johnson v. People, 149 Colo. 13, 367 P.2d 896 (1961); People v. Caruso, 174 Cal.App.2d 624, 345 P.2d 282 (1959)) that evidence which tends to show that the accused has attempted to fabricate or procure false evidence is admissible as showing a consciousness of guilt.

(4) *Rebuttal Testimony of the Prosecuting Attorney*

■ Appellant assigns error to the rebuttal testimony of Hugh Maguire, the prosecuting attorney of Bannock County, because his name was not indorsed on the Information and because the nature of his testimony was highly prejudicial. In tes-

tifying about various phone conversations he had with appellant in his official capacity, Mr. Maguire referred to one conversation wherein appellant wanted to know if there wasn't something that could be done to have the pending charges against him dismissed and "wanted to make a deal." The trial court ordered this testimony stricken from the record and instructed the jury to disregard it.

I.C. § 19–1302 provides in pertinent part that "witnesses called by the state in rebuttal need not be indorsed upon the information." Moreover, any prejudicial effect occasioned by this testimony was cured by the trial court's explicit admonition to the jury to disregard such testimony.

▮ The rule is well established in Idaho that an error in the admission of evidence may be cured by a proper instruction and it must be presumed that the jury obeyed the trial court's direction. State v. Urie, 92 Idaho 71, 437 P.2d 24 (1968); State v. Ramsbottom, 89 Idaho 1, 402 P.2d 384 (1965).

(5) *Motion for a New Trial*

▮ Appellant also assigns as error the failure of the trial court to grant a new trial. We have consistently held that where a verdict of conviction is supported by substantial, competent, though conflicting, evidence, it will not be disturbed on appeal. State v. Cypher, 92 Idaho 159, 438 P.2d 904 (1968).

(6) *Pre-sentence Investigation Report*

July 24, 1967, counsel for appellant presented argument to the court in mitigation of sentence and for withholding of sentence, which argument was responded to by Mr. McDermott; pertinent portion of the record follows:

"MR. PARRISH: If it please the Court, we have information which we feel should be made available to the Court in arriving at any sentence to be passed in this case. We would present to the Court a number of statements and letters from individuals which we would like the Court to consider, to weigh carefully.

 *   *   *   *   *·   *

"We have signed statements from twenty or thirty witnesses of a character-supporting nature. We would, Your Honor, of course, request some additional time in which to present the witnesses, to allow them to testify in person, as well as by their affidavits, or as well as by their signed statements, as to reasons why points which this Court should and properly would consider in the passing of any sentence.

 *   *   *   *   *   *

"At this time, Your Honor, we would strongly suggest to the Court, and we would move that a withheld sentence be given and that probation be granted to this Defendant.

"Supplemental to that, we would also move that additional time be allowed to present character witnesses and medical evidence, if necessary, and desired by the Court, as to the condition of this Defendant.

"Thank you, Your Honor.

"MR. PETER McDERMOTT: If it please the Court and counsel, Your Honor, this is one case that the State violently opposes any withheld sentence for the reason that we know, and counsel should know, that this man has had at least four or five other affairs with thirteen and fourteen year old girls, and on at least one or two of these he has used a gun. He has held a gun on them.

 *   *   *   *   *   *

"This, I don't know, but I am quite sure the pre-sentence investigation will bear this out, because this is general knowledge to the Police Department, to us, and to many other people.

 *   *   *   *   *   *

"This has been going on for several years, and there was never a case before to get the Defendant in Court and to get him tried on. In these sort of cases the Court knows they are difficult to prove. There was never a case where a conviction could be obtained, and now the Defendant has been convicted.

\*   \*   \*   \*   \*   \*

"We feel, Your Honor, in this case the Defendant should be given the maximum sentence, that sentence should be imposed now and that a bond of at least 50 thousand dollars be set so that this man is not loose on society pending any appeal.

"We think that and we hope that the probation officer's report will bear out that request. Thank you."

Thereafter, the court took a 10-minute recess to look over certain letters of recommendation presented by the defense and pronounced the following sentence:

"THE COURT: Mr. Parrish, I see no reason for any further continuance in this matter. I think it has been fully presented. I have gone over the letters which you presented to me, and I have thought a great deal about this matter, and it hasn't been an easy decision to arrive at because of the people that are involved in it, and the nature of the act, and also, the pre-sentence investigation report. Also, the way the trial was conducted, and the evidence that was presented, and it is apparent to the court that part of the defense could very well be tainted with perjury. This has been taken into consideration, as well as the pre-sentence investigation, and the court feels that it is for the best interest of the Rolfes and society, and the others that have been involved, that Mr. Rolfe be confined in the State penitentiary for life, and that is the order of the court."

By this summary procedure appellant was denied a withheld sentence and then sentenced to a term of life imprisonment without having had the opportunity either to examine the pre-sentence report or to controvert any of the facts reported therein in mitigation of sentence.

I.C. § 19–2601 vests the trial court with discretion to grant or refuse an application for probation. I.C. § 20–220 provides that "no defendant shall be placed on probation until a written report of investigation by a parole and probation officer shall have been presented to and considered by the court, and no defendant charged with a felony or indictable offense shall be released under suspension of sentence without such investigation."

In State v. Grady, 89 Idaho 204, 404 P.2d. 347 (1965), this court held:

"When a trial court receives information. from an investigation report, the accused. must have a reasonable opportunity to examine such report so that, should he desire, he may explain and defend adverse matters therein. Otherwise the opportunity to present evidence would be meaningless." 89 Idaho at p. 213, 404 P.2d. at p. 353.

More recently, this court in State v.. Edelblute, 91 Idaho 469, 424 P.2d 739 (1967), took the opportunity to comment. upon the nature of a probation application: hearing:

"From the foregoing cases, it is clear that a hearing regarding an application for probation must be conducted in a judicial manner. It is imperative that the hearing process 'afford the defendants full opportunity to present evidence in their behalf.' \* \* \* Further, the requirement that: the court conduct a probation application proceeding 'according to the established principles of law,' [citation omitted] and,. concomitantly, that an applicant for probation be granted 'full opportunity to present evidence in [his] behalf,' inherently demands that the applicant be specifically advised of all pertinent information received by the trial court so that: the applicant has an opportunity to 'explain and defend adverse matters \* \* \* [o]therwise the opportunity to present evidence would be meaningless,' State v. Grady, supra." 91 Idaho at p. 477, 424 P.2d at p. 747.

We now modify these rulings to comport with what this court deems the better rule, namely, that the trial judge has discretion as to whether the full contents of the pre-sentence report be disclosed to the defendant at the hearing on his application for probation. Where the trial judge chooses not to disclose the report, he is.

obligated, however, to give the defendant sufficient information concerning adverse matters contained therein so that the defendant may be in a position to offer intelligent refutation.

Moreover, where, as here, such a report is used by the trial judge as the basis for determining the sentence imposed, or where it might otherwise influence the court in arriving at a sentence, full disclosure of the contents of such report must be made prior to any hearing on the sentence, after an application for probation is denied, in aggravation or mitigation of punishment in order to comply with the requirements of our statutes.

I.C. § 19–2515 permits the trial court, upon the oral suggestion of either party, to consider such "circumstances which may be properly taken into view either in aggravation or mitigation of the punishment." These "circumstances must be presented by the testimony of witnesses examined in open court," and "[n]o affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section." I.C. § 19–2516.

The judgment of conviction is affirmed. However, the cause is remanded to the trial court for resentencing with directions to set aside the sentence heretofore pronounced and afford appellant full opportunity to present evidence in his behalf, after disclosure of the pre-sentence report, at the hearing in aggravation or mitigation of punishment. See State v. Gish, 87 Idaho 341, 393 P.2d 342 (1964); State v. Freeman, 85 Idaho 339, 379 P.2d 632 (1963).

SMITH, C. J., and TAYLOR and Mc-FADDEN, JJ., concur.

McQUADE, Justice (concurring).

I concur in the result reached by the majority. However, I disagree with several statements in the majority opinion and I think that certain facts recited therein but passed over in relative silence deserve further comment. The main areas of concern in this concurrence, in the order in which treated by the majority opinion, are: (1) motion for change of venue; (2) interview of prosecution witnesses by appellant's counsel; (3) non-disclosure during hearing on probation of pre-sentence investigation report. They will be discussed in that order.

(1) Concerning the motion for change of venue, the majority states that presented on appellant's behalf were affidavits of eighteen "persons representative of the community at large to the effect that appellant could not receive a fair and impartial trial in the southeastern Idaho area." Such proof certainly demanded a proper counter-showing by the state. But the state's response was frivolous. It was a meaningless counter-attack to rebut a random sample of prejudice with a numerical count of the group sampled. A proper counter-showing should have itself been representative of the temper of the community.

If we assume that appellant did have a fair trial, then abuse of discretion in refusal to change venue becomes harmless. But as a matter of sound judicial administration the critical point of time is before trial, not after. However the voir dire is not part of the record on this appeal and, especially in light of the absence of additional information to support the motion during voir dire, sufficient prejudice to require change of venue does not appear.

(2) Regarding the interview of prosecution witnesses by appellant's counsel, the district court correctly recognized appellant's right that they not be shielded from pre-trial questioning on appellant's behalf. However, the court did not go far enough in protection of that right: appellant's counsel should not have been merely permitted to interview the prosecution's witnesses if they chose to talk with him; rather the prosecution should have been ordered to produce its witnesses, under reasonable precautions, for such an interview.

Moreover, the conduct of the deputy prosecuting attorney was a violation of even the limited order for production of the witnesses. The court told both counsel that:

"I think it would probably be a little easier for Mr. McDermott to make the arrangements to talk to them in his office instead of your trying to talk to them because probably they wouldn't even talk to you if you approached them."

But the prosecuting attorney did not clearly advise witnesses that the interviews were to be in his office; nor did he speak personally with the prosecutrix, age fifteen, who testified that she would have agreed to such an interview in the prosecuting attorney's office; nor did he clearly indicate to two other witnesses that appellant's counsel had asked to speak to them and that the interviews would· be in the office of the prosecuting attorney—both testified that had they known the circumstances, they would not have objected to such interviews. Nevertheless, the deputy prosecuting attorney then wrote to appellant's counsel that· in accordance with the court's instructions he had contacted the witnesses who said they did not wish to talk to him, appellant's counsel.

In evaluating the conduct of the deputy prosecutor with respect to easing access to prosecution witnesses by appellant's counsel, the following colloquy is enlightening. Appellant's counsel, in asking to interview the prosecution witnesses, told the court:

"[W]e want to have as much information available as possible in order to prepare a complete defense for this man. This is the purpose of my motion."

To which the deputy prosecuting attorney replied:

"If the court please, his client is the one that got into this thing—."

(The court immediately disapproved this statement).

The deputy prosecuting attorney did not follow the court's instructions. Nevertheless, he then misrepresented that he had done so but that the witnesses refused to see appellant's counsel even under the court instructed arrangements. However, the record does not show that such conduct prejudiced appellant's rights with respect to the evidence admitted against appellant.

A prosecuting attorney, as representative of a just sovereign, has professional obligations to treat the accused fairly and impartially.[1] The dilatory conduct revealed by this record may not be condoned. The court arranged the manner of interview.

(3) With respect to the district court's refusal to permit appellant or his attorney an opportunity during his hearing for probation to examine the presentence report, I disagree with the majority opinion's statement of "the better rule" governing such disclosure.

Initially, I point out that the standard presented in State v. Grady, 89 Idaho 204 at 213, 404 P.2d 347 at 353 (1965), and discussed in State v. Edelblute, 91 Idaho 469 at 477, 424 P.2d 739 at 747 (1967), has been preserved, notwithstanding the majority opinion's intimation that it has been discarded. The purpose of permitting the applicant for probation to examine an investigation report is of course to give him "an opportunity to 'explain and defend adverse matters.'" State v. Edelblute, supra, quoting from State v. Grady, supra. But the majority opinion in the present action feigns to "modify these rulings" by giving the trial judge discretion whether to disclose the full contents of an investigation report, while leaving the judge "obligated," where full contents are not disclosed, "to give the defendant sufficient information concerning adverse matters contained therein so that the defendant may be in a position to offer intelligent refutation." Obviously this is merely reformulation—a change in procedure, but no alteration of the pertinent

1. Cf. State v. Spencer, 74 Idaho 137, 258 P.2d 1147 (1953); State v. Bush, 50 Idaho 166, 295 P.2d 432 (1930); State v. Harness, 10 Idaho 18, 76 P. 788 (1904).

standard of protection laid down in State v. Grady, supra, and State v. Edelblute, supra.

Next, I suspect that this "better rule" will only create confusion and require the trial judge who withholds full contents to take extraordinary pains to guarantee that the prospective probationer does receive "sufficient information concerning adverse matters contained therein," because in absence of a strong showing to the contrary, we must assume on review of a denial of probation, in order fully to protect the applicant's rights, that any investigation report contents that interpretably are adverse to the applicant have influenced the trial judge. If parts of a presentence investigation report were properly confidential, there would be reason for the new procedure announced by the majority today. But such is not the case. To the contrary, any information that cannot stand the light of inspection by the prospective probationer, is not worthy of the judge's consideration. Cf. Note, Right of Criminal Offenders To Challenge Reports Used In Determining Sentence, 49 Colum.L.Rev. 567, 570–572 (1949).

And there is no sound reason to require the trial judge to make full disclosure of the report when it is used as a basis for aggravation or mitigation of sentence, but not when it is used as a basis for denial of probation. As against withholding or suspension of sentence, probation differs only in degree from mitigation or aggravation.