369 P.2d 901

**STATE of Arizona, Appellee,**

v.

**Robert T. SMITH, Appellant.**

No. 1219.

Supreme Court of Arizona.

En Banc.

March 21, 1962.

Tupper & Skeens by Norman E. Skeens, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., Stirley Newell, Asst. Atty. Gen., Charles N. Ronan, County Atty. of Maricopa County, for appellee.

UDALL, Vice Chief Justice.

Defendant, Robert T. Smith, appeals from a conviction of and an eight to twelve

year sentence for the crime of first degree burglary [1] of an office within Elks Club No. 477 at 1007 South 7th Avenue, Phoenix, Arizona.

█ The material facts stated as they must be " * * * in the light most favorable to sustaining the conviction", State v. Evans, 88 Ariz. 364, 366, 356 P.2d 1106, 1107 (1960), are as follows. In the early morning hours of January 21, 1961 George Brown, bartender at the Elks Club, performed his usual nightly duties in securing the club for the evening. These included checking the outside doors and window locks, turning off the lights and turning the burglar alarm mechanism to its "night" setting. And because it was necessary to "close the circuit" he also shut but did not lock the doors to the several offices within the building. One of the doors so closed was the only one to the office of the Exalted Ruler. Having completed these tasks and having received the alarm office's buzz indicating that the circuit was closed and that the alarm system was working, Brown left the premises at 2:15 a. m.

Only four minutes elapsed before the Elks Club alarm (though silent at the Elks Club itself) rang at the Central Burglar Alarm Company thus indicating that the Club alarm had been manually turned off. And by 2:25 a. m. alarm company representative Antonio Perez, accompanied by several Phoenix police officers, arrived at the Club. Perez and the officers first determined that none of the exterior windows and doors had been broken and then entered the building. Inside they perceived that (1) the alarm mechanism had been placed on the "day" setting and (2) the door to the Exalted Ruler's office was locked. Perez immediately (2:30 a. m.) telephoned J. D. Holmes, the Exalted Ruler, and "right after that" notified bartender Brown of the incident. Perez and the officers then "sat outside the office" and talked while waiting for either Brown or Holmes to arrive with a key.

During this interlude the Phoenix Police Department (at 2:45 a. m.) received a telephone call from one identifying himself as the defendant. Defendant said that he was inside the office of the Exalted Ruler at the Elks Club and that "he was afraid someone else might be in the building." Over the telephone defendant told the police clerk on duty the same story he later

1. A.R.S. § 13-302 provides that:

"A. A person entering a building, dwelling house, *office* * * * with intent to commit grand or petty theft, or any felony * * * is guilty of burglary.

"B. Burglary committed in the nighttime is burglary of the first degree, punishable by imprisonment in the state prison for not less than one nor more than fifteen years. Burglary committed in the daytime is burglary of the second degree, punishable by imprisonment in the state prison for not to exceed five years." (Emphasis added.)

related at the time of arrest and at the trial—that he had passed out from drinking, awakened on the floor behind the cooling unit after the Club was closed for the night and had gone into the Exalted Ruler's office to make a phone call at which time he heard "footsteps" and became too frightened to leave the office.

When Brown arrived at 2:50 a. m. with a key the office door was opened and defendant was found therein. After the lights were turned on the officers discovered a flashlight and pocketknife on the floor of an adjacent shower stall and a screwdriver on defendant's person. There were wood splinters on the floor beneath a desk. Several of the drawers in this desk "had been pried open" and bore numerous "chip marks."

At the trial Holmes, the Exalted Ruler and occupant of the office, testified that when he had left the office at 1:30 a. m. of the same night the desk drawers were locked and that he had never before seen the screwdriver, flashlight or pocketknife. Further, Brown testified that when he had turned the lights out at 2:15 a m. he saw no one behind the cooling unit and that one of the light switches was behind the cooling unit itself.

On appeal defendant first contends that the trial court erred in failing either to require the state, or on its own motion, to amend the information to conform with the evidence and charge burglary of the building rather than of the office therein. In this connection defendant also argues that the trial court should have amended the information, *sua sponte*, to show the particulars of the offense and thus bar a subsequent prosecution for burglary of the building in the daytime. Both of these contentions are predicated on the fact that defendant had been seen at the Elks Club in the *afternoon* of January 20, 1961 and that he admittedly had the screwdriver in his pocket during this earlier visit to the Club. From these circumstances it is contended that an intent to commit a felony or petty theft within the Club can be inferred to have united with the afternoon entry by defendant and that he is therefore in danger of subsequent prosecution for second degree burglary.

This novel theory was not presented by defendant at the trial. Nor was the court ever requested to take the action now alleged to have been necessary. Rule 147 of the Arizona Rules of Criminal Procedure, A.R.S., provides that:

"Either the defendant or the county attorney is entitled, *upon motion* after final verdict and before sentence is pronounced or the defendant is discharged, to have the indictment or information amended to state the particulars of the offense, as proved, in such a manner that the indictment or

information shall without evidence aliunde be sufficient to bar a subsequent prosecution for the same offense constituted by the same particulars." (Emphasis added.)

 Aside from the fact that there was no variance between the crime charged in the information and that for which defendant stands convicted, no such "motion" was ever made. Accordingly, defendant cannot now allege that failure to amend the information constituted error.

 Defendant next contends that the trial court erred in failing to submit to the jury a form verdict on second degree burglary. The short answer to this argument is that counsel for defendant expressly agreed that "two forms of verdict, one guilty as charged and the other not guilty were satisfactory." This court has often ruled that in the absence of request by counsel the trial court has no duty to either instruct the jury, Uren v. State, 27 Ariz. 491, 495, 232 P. 398, 399 (1925), or to submit to them a verdict upon an offense other than the one with which defendant is charged. State v. Pollock, 57 Ariz. 415, 418–420, 114 P.2d 249, 250–251 (1941).

 Finally, it is urged that the trial court abused its discretion in imposing the eight to twelve year sentence. The penalty imposed was within the limit of the statute (fifteen years) and defendant's record disclosed a prior felony conviction (grand theft). It matters not that one or all of the justices of this court might have imposed a lesser sentence in the case. It is enough that there be no abuse of discretion by the trial judge in the matter. E. g., State v. Castano, 89 Ariz. 231, 360 P.2d 479 (1961). Plainly there was no such abuse here.

The judgment and sentence are affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, JENNINGS, and LOCKWOOD, JJ., concurring.