406 P.2d 202

**STATE of Arizona, Appellee,**

v.

**John R. SOWARDS, Appellant.**

**No. 1399.**

Supreme Court of Arizona.

In Division.

Sept. 24, 1965.

Robert W. Pickrell, former Atty. Gen., Howard Schwartz, Asst. Atty. Gen., Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., for appellee.

Westover, Copple, Keddie & Choules, by Douglas Keddie, Yuma, Murray Miller, Phoenix, for appellant.

UDALL, Justice.

Appellant, John R. Sowards, hereinafter referred to as defendant, was convicted of the crime of grand theft in a trial by jury in the Superior Court of Yuma County. From that conviction he brings this appeal.

Earl Brown was the owner of certain cattle corralled in a small feed lot near Roll, Arizona in April of 1963. There were 37 heifers in the lot on April 11, 1963, and the next day when the lot was checked Brown found 14 head missing therefrom, valued by Brown at $100 each. On April 20, 1963, in the company of Yuma County Sheriff Yancy, Deputy Sheriff Captain Crow and others, Brown identified the 14 missing head

at a feed lot of Bob Sasser near Scottsdale, Arizona.

The material facts are stated, according to the usual rule, in a light most favorable to sustaining the conviction. State v. Smith, 91 Ariz. 49, 369 P.2d 901 (1962); State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960). On April 11, 1963 defendant was asked by Bob Ross, a friend and former employer, to pick up Ross's 1½ ton truck and drive to a garage in Tacna, Arizona where it was to be repaired. After the repair work was completed, defendant drove the truck to his home in Roll, Arizona. The following morning Ross drove to defendant's home and was advised defendant had left for the camp. Ross did not find defendant at the camp and, after searching for a period of time, located him at the site of Brown's feed pen loading cattle. Ross asked defendant what he was doing to which defendant replied, "We might as well make use of this inspector while we have got him." The evidence would seem to indicate that Ross and defendant could get false inspection papers on any cattle as long as there was a percentage in it for area brand inspector Tommy Bowman.

After loading the cattle into the truck, defendant departed for Phoenix, Arizona while Ross drove to Bowman's house to secure false inspection papers. Ross then began driving to Phoenix in his pickup truck and overtook defendant west of Gila Bend, Arizona where he gave the inspection papers to defendant. Both parties continued toward Phoenix and Cornelius Livestock Auction where the cattle were unloaded, tagged and subsequently sold.

Between the delivery and sale, defendant and Ross ran some errands in Phoenix until 2:30 or 3:00 p. m., when they returned to the auction and defendant received a check for $1,110.02 in payment of the cattle sold that morning. Defendant and Ross then drove to Casa Grande, Arizona, cashed the check, and divided the proceeds.

Defendant, in his first assignment of error, contends that the trial court erred in permitting Bowman to testify as a witness in rebuttal and, further, in denying defendant's motion for mistrial and motion for new trial based thereon. The witnesses were sworn and the "rule" invoked at the beginning of the trial. The judge gave the standard instruction that all witnesses would be excluded from the courtroom except when testifying, and witnesses must not discuss the case nor their testimony, given or expected to be given, with anyone other than the attorneys. After this instruction the county attorney interviewed a witness for defendant in the presence of Bowman, who had previously been sworn as a witness under the exclusionary rule. The county attorney was not aware Bowman was in the room initially as the county attorney had his back to the door. Just prior to leaving the room, however, the county attorney asked the witness again about the time he received a telephone

call from defendant. The state, in rebuttal, called Bowman for the purpose of impeaching the witness who was interviewed by the county attorney and had rendered a different version on the stand. Defense counsel made timely objection to Bowman testifying, which was overruled by the trial court.

Arizona has no statutory provision or criminal procedure rule relating to the sequestration of witnesses during a trial, but this common law practice was followed in our courts before Arizona became a state. Territory of Arizona v. Dooley, 3 Ariz. 60, 78 P. 138 (1889). The purpose of excluding witnesses from the trial is to encourage the discovery of truth, and detection and exposure of falsehood. State v. Thomas, 78 Ariz. 52, 275 P.2d 408 (1954). As we have previously said, exclusion of witnesses from the courtroom and administration of the exclusionary rule is within the sound discretion of the trial judge and this court will not disturb the ruling of the trial court unless there is shown an abuse of discretion and resulting prejudice therefrom. State v. Romero, 85 Ariz. 263, 336 P.2d 366 (1959).

The violation of the order of exclusion does not in itself make the witness incompetent to testify. In State v. Romero, supra, we held, as to this point, there was no abuse of discretion where the trial judge permitted a justice of the peace to testify after the rule was invoked and the judge remained in the courtroom. In the instant case, the trial judge permitted Bowman to testify after witnesses were sworn and the rule invoked, and Bowman was present when the county attorney interviewed a defense witness. There was no showing of an abuse of discretion or prejudicial result from the witness, Bowman, testifying as to the prior inconsistent statement for impeachment purposes. The assignment is without merit.

Defendant, in his second assignment of error, claims the trial court should have granted a mistrial and a new trial because of misconduct of the county attorney, arising from repeated efforts of the county attorney to introduce in evidence the type of clothing defendant was wearing at the time of arrest, and clothing worn by defendant in a line-up for identification purposes. It appears that defendant, immediately prior to the line-up, changed shirts with one of his cell-mates in an attempt to confuse one of the state's witnesses of his identification. The county attorney's theory as to admissibility of this evidence was that it showed a consciousness of guilt by defendant. The trial judge ruled that the county attorney could show what clothing defendant wore at the time of the line-up, but not whether defendant changed his shirt prior to the line-up.

This Court recognizes that conduct may be evidence of consciousness of guilt, as indicated by State v. Loftis, 89 Ariz. 403, 363 P.2d 585 (1961). See 2 Wigmore, Evi-

dence § 277 (3rd Ed. 1940). As we said in the Loftis case, "[f]acts tending to show that the defendant manufactured or fabricated evidence is not only admissible, but is also reliable as showing a consciousness of guilt."

■ The identification of defendant was a material fact in this case. It tended to prove that defendant delivered stolen cattle to the auction and claimed to be the rightful owner. If the witness could not make a positive identification of defendant, the state's case would have been considerably weakened. This line of questioning was proper and should have been permitted; however, it was error favorable to defendant and thus not prejudicial error.

■ Defendant also contends that where, in response to an objection of defense counsel to a question propounded by the county attorney along lines of inquiry prohibited by the trial judge in four rulings immediately preceding such questions, the comment of the county attorney, "Now what could be so prejudicial about that question?", constitutes misconduct of counsel warranting the granting of a mistrial. As soon as the comment was made, defense counsel objected; the trial court sustained the objection and instructed the jury to ignore the remark. The instruction by the trial judge to the jury to disregard the comment by the county attorney removed the comment from the province of the jury and cured any error which may have occurred. See Martin v. State, 22 Ariz. 327, 197 P. 578 (1921).

Defendant assigns as error the trial court's denying defendant's motion for mistrial and for new trial on the grounds that the county attorney, in argument to the jury, referred to prior convictions of defendant repeatedly in a manner calculated to have the jury consider such convictions as substantive evidence that defendant committed the crime here charged, and not solely for impeachment of the credibility of defendant.

■ In Arizona, where the prior conviction is not too remote, a prior felony conviction may be introduced when defendant takes the stand on his behalf, to impeach him as to his credibility. State v. Polan, 78 Ariz. 253, 278 P.2d 432 (1954); State v. Harris, 73 Ariz. 138, 238 P.2d 957 (1951). The county attorney is not limited to introduction of felony convictions which occurred only in Arizona. Compare, State v. Daymus, 90 Ariz. 294, 367 P.2d 647 (1961), with State v. Morales, 98 Ariz. 169, 402 P.2d 998 (1965).

■ In this case the county attorney attempted to show, on cross-examination of defendant, that defendant had been convicted of six other felonies. The record is confusing as to whether two of the alleged crimes were felonies. No objections were

**28**

made, however, by defense counsel nor a motion to strike that portion of testimony on the convictions in Michigan and Texas. As to the Texas conviction, the county attorney attempted to explain the ambiguity surrounding the charge in Texas and counsel for defendant accepted the clarification and stated that defendant admitted the conviction. Defendant did not deny the prior conviction on the stand, nor did he make a demand that the prosecutor make proof by showing certified copies of the judgment of conviction. Failure on the part of defense counsel to object to the evidence was a waiver, and he cannot now assign this as error, as claimed error not supported by proper objection will not be considered on appeal. State v. Cumbo, 96 Ariz. 385, 396 P.2d 11 (1964); State v. Favors, 92 Ariz. 147, 375 P.2d 260 (1962).

■ The county attorney, in his closing argument, made reference to defendant's past convictions to illustrate his credibility. Defendant now contends he did not receive a fair and impartial trial because the remarks were calculated to prove he committed other crimes of like nature for the purpose of showing he committed the crime for which he is on trial. Defendant made no objection to this argument at trial. Therefore, he waived the right to have it reviewed. State v. Hernandez, 96 Ariz. 28, 391 P.2d 586 (1964); State v. Griffith, 92 Ariz. 273, 376 P.2d 134 (1962); State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955).

■ Defendant further contends the trial court erred in denying his motion for a new trial for the reason the verdict and judgment are contrary to law and weight of the evidence received in the course of trial. The general rule granting or denying a new trial in a criminal case states that the matter is largely discretionary with the trial court. This discretion must be exercised in a legal, and not arbitrary, manner and the trial court's decision will not be reversed by this court unless it appears affirmatively there has been an abuse of discretion. This Court, after reviewing the record, cannot say the trial judge, who conducted the trial and observed witnesses first hand, manifestly abused this discretion in denying defendant a new trial. State v. Bogard, 88 Ariz. 244, 354 P.2d 862 (1960); State v. Turner, 92 Ariz. 214, 375 P.2d 567.

Defendant asserts the trial judge rendered an excessive sentence under the facts of this case. The defendant was found guilty of grand theft, A.R.S. § 13–663 (1956), as amended, and sentenced under A.R.S. § 13–671 (1956) which provides that grand theft is punishable by imprisonment for not less than one nor more than ten years. Defendant was sentenced to serve a term of not less than two or more than ten years.

We have frequently said, if sentence upon conviction of a crime is within the limits of the penalty prescribed by appropriate statute, that it will not be revised or reduced by this court unless it clearly appears the sentence imposed is excessive, resulting in an abuse of discretion. State v. Corrales, 95 Ariz. 401, 391 P.2d 563 (1964); State v. Salinas, 95 Ariz. 62, 386 P.2d 790 (1963); State v. Buckmaster, 94 Ariz. 314, 383 P.2d 869 (1963). As we said in State v. Maberry, 93 Ariz. 306, 380 P.2d 604 (1963):

"Because a defendant appears in person before the trial judge, the trial judge is, in most instances, better able than we to evaluate him and to determine what is necessary to rehabilitate him to constructive activity. It is for this reason that the legislature has given the trial court wide discretion to sentence a defendant for a period somewhere between a statutory minimum and a statutory maximum. * * * We have traditionally been prone to uphold a sentence declared by a trial judge when it is in conformity with the statute and there is no clear evidence that he has abused his power in the particular case."

In State v. Maberry, supra, we held a sentence of seven to nine years for grand theft imposed on a defendant with two prior felony convictions was not an abuse of the trial court's discretionary power.

In the instant case, we find the sentence was within statutory liimitations and was not an abuse of discretion by the trial court to sentence defendant for the prescribed period. Defendant had been convicted of six prior crimes and the trial judge, no doubt, took this into consideration as he should. The fact a corrupt public officer was involved, or other individuals charged with this crime received suspended sentences, is not significant since sentencing must be an individual matter. The trial court has the duty to examine the criminal character and history of the accused to enable him to intelligently and judicially determine the proper sentence in each case to attain the principal purpose of sentencing, i. e., rehabilitation. Under the circumstances of this case we think the sentence was not excessive.

The defendant, in his final assignment of error, contends he was prejudiced by having been represented at trial by counsel who, during the course of trial and prior thereto, was seeking appointment to the position of Civil Deputy in the office of the County Attorney of Yuma County who prosecuted this action against him. Defendant alleges this created a conflict of interest, or potential conflict of interest, which was not disclosed to him until after

the trial and, therefore, he was deprived of the best efforts of his counsel.

 This case came on for trial on August 13, 1963, and defense counsel was appointed Civil Deputy in the Yuma County Attorney's office on September 1, 1963. The supplemental transcript of proceedings indicates the appointment at the date of trial was not definite as neither party was certain it would be approved. We recognize, under some circumstances, this possible conflict of interest could deprive an accused of a fair trial. However, as we said in State v. Garaygordobil, 89 Ariz. 161, 359 P.2d 753 (1961), "[t]he mere possibility of a future conflict of interest developing by an attorney representing different interests is not sufficient to disqualify him." A fair trial, as well as the ethics of the profession, could, under some circumstances, demand a case be reversed where such a conflict of interest is shown. The present case, however, does not require such a disposition.

A complete reading of the record shows defendant received adequate representation and there is no showing of a conflict of interest which deprived him of a fair trial.

The judgment is affirmed.

STRUCKMEYER, V. C. J., and BERNSTEIN, J., concurring.