380

499 P.2d 95

STATE of Arizona, Appellee,

v.

Leroy Stephen ROCCO, Appellant.

No. 2350.

Supreme Court of Arizona,
In Banc.

July 14, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Leek & Oehler by Daniel J. Oehler, Bullhead City, for appellant.

HAYS, Chief Justice.

Defendant Leroy Stephen Rocco was tried by a jury, found guilty of the crime of possession of marijuana, and sentenced to a term of not less than three nor more than five years in the penitentiary. He appeals.

Detective Chapin, of the Mohave County Sheriff's office, had Rudy Santana's car under surveillance, by using a pair of binoculars from an unmarked sheriff's car about 150 yards away. This action was taken on orders from his superior officer because Santana was suspected of trafficking in drugs.

Chapin saw Santana come out of the Pinnocchio Bar, in Kingman, with defendant. Santana opened the door of his car, reached inside, and removed a shiny package about the size of a man's fist. He gave the package to defendant who concealed it under his coat, got into his own pickup, and drove away, as Santana went back into the bar. The detective followed defendant's truck until it stopped at a railroad crossing where the bars were down to permit a train to pass. He parked a short distance behind defendant, got out of his car, walked to the truck, showed his official badge, and requested defendant to back his truck to the side of the road where they could talk without obstructing traffic. When defendant agreed, the officer walked back to his car and waited. As defendant started slowly backwards, the train passed and the crossing guards went up. Defendant immediately shifted into a forward gear, gunned his motor, spun his wheels, and took off. As he did so, the shiny package that he had gotten from Santana was ejected from the window on the driver's side of defendant's truck. Chapin got back in his car and gave chase. Defendant stopped after traveling only a few blocks. Defendant got out of his pickup, and Chapin patted him down for weapons. The officer testified: "I then handcuffed him and placed him under arrest for D.W. I." He also testified that "D.W.I." in-

cludes driving under the influence of drugs.

Defendant's version is somewhat different. He testified that when he got out of his car he asked: "What is the problem?" and the officer replied: "You are under suspicion of transporting narcotics." Defendant then asked: "Why can you search me and search my truck? . . . Are you arresting me?" and Chapin answered: "Yes. You are under arrest for drunk driving."

In either event, there is no question but that defendant was handcuffed and arrested. A few minutes later, Officer Stanley of the Sheriff's office arrived and took defendant away to book him. Chapin then searched the pickup and found a hand-rolled cigarette, a package of cigarette papers, and a cigarette butt. He then drove back to the railroad crossing where Detective Spears met him and, after a search, the package that defendant had thrown from the car was discovered. It was a shiny plastic bag which had burst when it landed, spilling out the contents. Those contents, as well as the other cigarette found in the truck, were all analyzed and proved to be marijuana.

Chapin and Spears then set out to find Santana, and found him inside the Office Bar. Chapin asked Santana to come outside to the latter's car, which was then searched. Chapin found a baggie of marijuana underneath the sun visor. Later, Santana pleaded guilty to possession of marijuana and was sent to the state penitentiary. He appeared at the trial as a state witness and testified that he had known defendant about a year; that he gave a baggie of marijuana to defendant at the latter's request, outside the Pinnocchio Bar; that both the one he gave defendant and the one which he kept behind his own car's sun visor were identical.

▪ Defendant argues two points. The first is that the search of defendant's car was not incident to a valid arrest. This, he contends, is obvious from the fact that Chapin arrested defendant for D.W.I. and

in his testimony admitted that defendant's driving had not been unusual. For this reason, defendant argues, the arrest was just a pretext to enable the officer to search the vehicle, and therefore the evidence thus found was illegally obtained and inadmissible.

If it were true that the arrest was just a pretext for the search, defendant would be correct. But he himself admitted on the witness stand that the arresting officer told him that he was suspected of transporting narcotics. The events leading up to the arrest, as previously recited above, constituted probable cause to arrest defendant for possession of contraband drugs. Had he made the arrest on that ground, there would not be a basis for defendant's contention. We decided this point in State v. Miller, 108 Ariz. 303, 497 P.2d 516 (1972), in which we stated that where there is probable cause to arrest for a more serious crime (here, possession of narcotics), the arrest for the less serious crime (here, D.W.I.) is not a mere subterfuge:

"* * * The officers' correct choice of a legal theory to rely on at the time of the arrest is not the factor which provides protection to persons from unreasonable searches and seizures. The barrier to an intrusion on a person's constitutionally guaranteed 'zone of privacy' by way of an arrest for a crime is removed only when the police officers are aware of specific, articulable facts amounting to 'probable cause' . . . . Where the police awareness of such facts is not present, then their choice of a legal thoery is irrelevant because the arrest is invalid in any case. Where the police awareness of such facts is present, society's need to have the person arrested outweighs whatever minimal value the person arrested receives from having the arresting officers choose the correct legal theory for the arrest. The issue is, did the officers, at the time they stopped the car, have knowledge of facts and circumstances sufficient to warrant a prudent man of

reasonable caution in believing that the drvier (sic) of the car had committed a burglary and assault. We hold that they did have such knowledge."

Defendant's second argument is that the trial court committed reversible error in permitting the prosecutor to cross-examine defendant with reference to defendant's prior conviction of a crime which was not a felony. The transcript reveals the following:

"Q. You have been convicted of a felony, haven't you?

A. Yes sir.

Q. And when and where?

A. In 1965 in Los Angeles.

Q. And for what felony?

A. I bought a shotgun that proved to have been stolen.

Q. You plead guilty to the charge, is that correct?

A. Yes, to receiving stolen goods, yes sir."

Defense counsel made no objection to this line of questioning until two months after defendant was sentenced, at which time new counsel filed and argued a "Motion To Vacate Judgment and To Suspend Sentence." No explanation for the delay appears in the record. A reasonable explanation would be that it was not until then that it was discovered that under California law, defendant's prior conviction of a "felony" was in fact only a misdemeanor. The trial judge overruled the motion, stating that he did so because the defendant admitted the felony conviction while being questioned on the witness stand, and because his counsel made no objection and did not move for a mistrial.

Defendant cites several cases of which only State v. Morales, 98 Ariz. 169, 402 P.2d 998, bears on the issue. *Morales* holds that it is reversible error for a trial court to overrule an objection to a question about a prior bad act which did not result in a felony conviction. We have found no case which holds that the admission of a prior bad act not amounting to a convic-

tion of a felony, is fundamental error so that no objection need be made. As a matter of fact, just the opposite is true. In State v. Sowards, 99 Ariz. 22, 406 P.2d 202, a conviction was introduced, the felony status of which was in doubt. We held:

"Defendant did not deny the prior conviction on the stand, nor did he make a demand that the prosecutor make proof by showing certified copies of the judgment of conviction. Failure on the part of defense counsel to object to the evidence was a waiver, and he cannot now assign this as error, as claimed error not supported by proper objection will not be considered on appeal."

Defendant's second contention is, therefore, without merit.

Judgment affirmed.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.