NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CAROL ANN LINCOURT, *Appellant.*

No. 1 CA-CR 18-0290
FILED 7-25-2019

Appeal from the Superior Court in Navajo County
No. S0900CR201501023
The Honorable Dale P. Nielson, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

DM Cantor, Phoenix
By David M. Cantor, Christine Whalin, Sabra M. Barnett, Jason Karpel
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Diane M. Johnsen joined.

**W I N T H R O P**, Judge:

¶1 Carol Ann Lincourt appeals her convictions and sentences for transportation of a dangerous drug for sale (methamphetamine), possession of a dangerous drug for sale, and misconduct involving weapons. Lincourt argues the trial court (1) erred in denying her motions to suppress; (2) allowed prosecutorial and juror misconduct, resulting in an unfair trial; (3) erred in admitting evidence; and (4) improperly considered an aggravating factor at sentencing. Lincourt also argues that pervasive law enforcement "impropriety" requires reversal. For the following reasons, we vacate her conviction for possession of a dangerous drug for sale, but otherwise affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶2 In the early morning of October 16, 2015, Navajo County Sheriff's Office Deputy Watson stopped the vehicle Lincourt was driving near Heber. After asking Lincourt for her license and registration, Deputy Watson ordered Lincourt to exit her vehicle and stated he was issuing her a warning for speeding. Once out of the vehicle, Lincourt appeared nervous, was sweating profusely, and repeatedly looked back at her vehicle. When asked whether she had weapons or illicit drugs in her vehicle, Lincourt stated she did not, and the deputy proceeded to run Russell, his drug-detection dog, around the perimeter of Lincourt's vehicle "[t]o conduct a free air sniff." Trained to identify marijuana, cocaine, heroin, and methamphetamine, the dog alerted twice near the vehicle's driver's side. Deputy Watson searched the interior of the vehicle, and behind a panel near the left rear wheel, he found approximately 120 grams of methamphetamine wrapped in a plastic bag. He also found a handgun and more than $1,000 in a briefcase in the passenger area.

¶3 The State charged Lincourt with one count each of transportation of a dangerous drug for sale, a class two felony; possession of a dangerous drug for sale, also a class two felony; and misconduct involving weapons, a class four felony. Challenging the lawfulness of the traffic stop and Deputy Watson's search of her vehicle, Lincourt moved before trial to suppress the evidence the deputy had obtained. Following an evidentiary hearing, the court denied Lincourt's motions.

---

[1] We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Lincourt. *See State v. Kiper*, 181 Ariz. 62, 64 (App. 1994).

¶4            The jury found Lincourt guilty as charged.  The jury also determined the State proved Lincourt committed the drug offenses with the expectation of pecuniary gain.  The court imposed concurrent, presumptive terms of imprisonment, the longest of which was ten years.  Lincourt timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**ANALYSIS**

I.      *Motions to Suppress*

¶5            Lincourt makes several arguments challenging the trial court's denial of her motions to suppress.  She argues Deputy Watson lacked reasonable suspicion to stop her for speeding, the deputy unlawfully extended the stop after she refused his request to search her vehicle, and the dog sniff and alert were not sufficiently reliable to create probable cause to support the warrantless search.

¶6            In reviewing the denial of a motion to suppress, we review only the evidence submitted at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631 (1996), and view the facts in the light most favorable to affirming, *State v. Driscoll*, 238 Ariz. 432, 433, ¶ 2 (App. 2015) (citation omitted).  We defer to the trial court's determinations of the witnesses' credibility and the reasonableness of the inferences the court drew, but we review the court's legal decisions *de novo*.  *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118 (1996).  We will not reverse a ruling on a motion to suppress absent clear and manifest error, a standard that has been equated with abuse of discretion.  *State v. Newell*, 212 Ariz. 389, 396 n.6, ¶ 22 (2006).

¶7            Although "[a]n investigatory stop of a motor vehicle constitutes a seizure under the Fourth Amendment," *Gonzalez-Gutierrez*, 187 Ariz. at 118 (citation omitted), an officer needs only reasonable suspicion that the driver has committed an offense to stop a vehicle.  *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).  Reasonable suspicion exists when the "totality of the circumstances" provides "a particularized and objective basis for suspecting the particular person" has violated the law. *See Gonzalez-Gutierrez*, 187 Ariz. at 118 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)); *accord State v. O'Meara*, 198 Ariz. 294, 295, ¶ 7 (2000) (quoting *Cortez*, 449 U.S. at 417-18).  An officer is not required to determine a violation has occurred before stopping a vehicle for further investigation. *See State v. Vera*, 196 Ariz. 342, 343-44, ¶ 6 (App. 1999); A.R.S. § 28-1594 ("A peace officer . . . may stop and detain a person as is reasonably necessary to

investigate an actual *or suspected* violation of [the traffic laws]." (emphasis added)).

¶8 First, Lincourt argues Deputy Watson lacked reasonable suspicion to stop her for speeding. Deputy Watson testified at the suppression hearing that, before stopping Lincourt, his radar indicated she was driving fifty miles per hour in a forty-five mile-per-hour posted speed zone. Deputy Watson also explained that he calibrated the radar before his shift that day, as he typically does before every shift. The trial court noted that Lincourt presented expert testimony that her speed at the time was approximately forty-five miles per hour. Nonetheless, the court found Deputy Watson had reasonable suspicion to stop Lincourt, and even assuming *arguendo* the deputy's radar device may not have been entirely accurate, on this record the deputy could rely on a good faith belief in the device's accuracy. Because Deputy Watson had a "particularized and objective basis" for suspecting Lincourt was speeding, the trial court did not err in finding he had reasonable suspicion to justify the traffic stop. *See generally State v. Ossana*, 199 Ariz. 459, 460-61, ¶¶ 3, 8 (App. 2001), *declined to follow in part by Raney v. Lindberg*, 206 Ariz. 193, 195, 199-200, ¶¶ 1, 18-22 (App. 2003).

¶9 Second, Lincourt argues Deputy Watson impermissibly prolonged the traffic stop by ordering her to exit her vehicle as he issued her a warning, asked her questions including a request to search her vehicle, and conducted the dog sniff. In general, an officer's questions during a traffic stop do not violate the Fourth Amendment if the questioning does not unreasonably prolong the stop. *See State v. Teagle*, 217 Ariz. 17, 23, ¶ 24 (App. 2007); *but see Rodriguez v. United States*, 135 S. Ct. 1609, 1614-16 (2015) (holding that a stop is unlawfully prolonged when a law enforcement officer, without reasonable suspicion, extends an otherwise-completed traffic stop beyond its mission to conduct a dog sniff). Thus, as happened in this case, an officer may ask questions directly related to the stop, such as requesting the driver's license, registration, and proof of insurance, and determining whether there are any outstanding warrants against the driver. *See State v. Paredes*, 167 Ariz. 609, 611 (App. 1991); *Rodriguez*, 135 S. Ct. at 1615. Further, any time an officer has lawfully detained a motorist, the officer may ask questions related to officer safety and order the driver (and any passengers) to get out of the car for officer safety reasons. *See Newell v. Town of Oro Valley*, 163 Ariz. 527, 529 (App. 1990); *Rodriguez*, 135 S. Ct. at 1614, 1616. And certainly, we believe an officer may take the time to answer questions asked of the officer by the driver (or any passengers), as happened in this case. *Cf. State v. Sweeney*, 224 Ariz. 107, 112, ¶ 17 (App. 2010) (recognizing that an officer may prolong a traffic

search if the encounter becomes consensual). Further, even absent reasonable suspicion, an officer may ask for consent to search the vehicle or ask questions unrelated to the traffic stop if the officer's questions do not extend the time reasonably required to complete the traffic stop's mission. *See Rodriguez*, 135 S. Ct. at 1616; *see also Wilkes v. State*, 774 A.2d 420, 437-38 (Md. 2001) (finding no constitutional violation when an officer with a drug-sniffing dog arrived at the scene of a traffic stop made by another officer and conducted a dog sniff before the traffic stop was completed). However, once an officer has completed the mission of the traffic stop prior to conducting a dog sniff, any additional detention for the purpose of conducting an unconsented-to dog sniff, absent reasonable suspicion, is unconstitutional. *See Rodriguez*, 135 S. Ct. at 1616; *Driscoll*, 238 Ariz. at 434, ¶ 10.

¶10        In this case, evidence from the suppression hearing supports the trial court's conclusion that Deputy Watson had reasonable suspicion to detain Lincourt for the limited purpose of permitting Russell to sniff the outside of Lincourt's vehicle. The evidence established that Deputy Watson, at the time of the stop, knew a drug task force was tracking Lincourt's travels in her vehicle via a GPS device. Thus, after Deputy Watson saw Lincourt's suspected traffic violation and stopped her, the deputy's subsequent confirmation of her identity, combined with his knowledge that she was the target of a drug investigation, *see State v. Lawson*, 144 Ariz. 547, 553 (1985) (applying the collective knowledge doctrine), and his observation of her numerous nervous behaviors, which suggested that criminal activity might be afoot, established the necessary reasonable suspicion to conduct the dog sniff. The trial court therefore did not err in denying Lincourt's motion to suppress on this basis. *See Rodriguez*, 135 S. Ct. at 1616-17 (remanding to address whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction investigation). And once Russell alerted to the presence of drugs, Deputy Watson had probable cause to search Lincourt's vehicle, *see State v. Weinstein*, 190 Ariz. 306, 310-11 (App. 1997), where he discovered the contraband leading to her arrest.

¶11        Third, Lincourt argues the canine sniff of her vehicle "was not sufficiently reliable for probable cause" to support Deputy Watson's subsequent warrantless search because the deputy did not maintain records memorializing the results of Russell's field deployments.[2]  We reject

---

[2]        Lincourt, for the first time on appeal, also summarily asserts the sniff was unreliable because Russell "did not alert consistently and did not alert

Lincourt's argument. As the United States Supreme Court has held, a log indicating a dog's field performance results is not necessary to establish an alert's reliability; instead, "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Florida v. Harris*, 568 U.S. 237, 246 (2013). Here, the State disclosed Deputy Watson's and Russell's certification and training history, which apparently included successful training sessions three days before the stop in this case and one month thereafter. Based on *Harris* and the evidence of Russell's certification and training history, the trial court did not err in denying Lincourt's motion to suppress based on Russell's purported unreliability.

## II.    Asserted Prosecutorial Misconduct

¶12        Before voir dire commenced, Lincourt invoked the rule of exclusion of witnesses. *See* Ariz. R. Crim. P. 9.3(a)(1); *see also* Ariz. R. Evid. 615 (excluding witnesses "so that they cannot hear other witnesses' testimony"). Immediately after voir dire was completed, and the jury left the courtroom for the lunch recess, the following transpired:

> THE COURT:  Is that one of your witnesses?
>
> [THE PROSECUTOR]:  It is.
>
> [DEFENSE COUNSEL]:  This is a friend.
>
> THE COURT:  No, the officer.
>
> [THE PROSECUTOR]:  Yes, Deputy Watson.
>
> THE COURT:   The exclusion actually includes [law enforcement witnesses] being excluded during the jury selection process, but apparently you didn't know that.  I don't see that being a problem now but obviously he will need to be excused.

---

to the correct area of [the] vehicle." Lincourt fails to develop any argument to support this assertion. We therefore do not address it. *See State v. Lindner*, 227 Ariz. 69, 70 n.1, ¶ 3 (App. 2010) (recognizing that an appellate court will not address arguments that are not developed in a defendant's opening brief).

[THE PROSECUTOR]: I assumed it was just for testimony, Your Honor.

THE COURT: No, it's for the whole process.

[THE PROSECUTOR]: Okay.

¶13         Lincourt argues the prosecutor engaged in misconduct by allowing Deputy Watson to remain in the courtroom during voir dire despite Lincourt's invocation of the rule excluding witnesses.[3] Because Lincourt failed to object at trial, we review this issue for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).

> A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial. If the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice, which also "involves a fact-intensive inquiry." If the defendant establishes the third prong, he has shown both fundamental error and prejudice, and a new trial must be granted. The defendant bears the burden of persuasion at each step.

*State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018) (internal citations omitted).

¶14         In reviewing a claim of prosecutorial misconduct, our "focus is on the fairness of the trial, not the culpability of the prosecutor." *State v. Bible*, 175 Ariz. 549, 601 (1993) (citations omitted), *possible abrogation in part recognized by McKinney v. Ryan*, 813 F.3d 798, 815-18 (9th Cir. 2015). "Prosecutorial misconduct 'is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial . . . .'" *State v. Aguilar*, 217 Ariz. 235, 238-39, ¶ 11 (App. 2007) (quoting *Pool v. Superior Court*, 139 Ariz. 98, 108-09 (1984)). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

---

[3]         Deputy Watson was not the State's case agent in this matter.

**¶15**　　　　A violation of Arizona Rule of Criminal Procedure 9.3(a) does not automatically require reversal. *State v. Hadd*, 127 Ariz. 270, 277 (App. 1980). Generally, "[t]he admission of testimony after a rule violation is a matter of discretion with the trial judge, and absent an abuse of that discretion and subsequent prejudice to [the] appellant, we will not interfere." *Id.* (citing *State v. Sowards*, 99 Ariz. 22, 26 (1965)); *accord State v. Jones*, 185 Ariz. 471, 483 (1996), *possible abrogation in part recognized by McKinney*, 813 F.3d at 815-18.

**¶16**　　　　Lincourt maintains Deputy Watson's presence during voir dire prejudiced her because "the potential jurors may have recognized or known Deputy Watson, [and he] may have helped in jury selection." Lincourt's argument in this regard is based on pure speculation and is directly refuted in part by the record, which shows no prospective jurors indicated during voir dire that they knew Deputy Watson. When reviewing for fundamental error, "[w]e will not reverse a conviction based on speculation or unsupported inference." *State v. Diaz*, 223 Ariz. 358, 361, ¶ 13 (2010) (citations omitted); *see also State v. Doerr*, 193 Ariz. 56, 61, ¶ 18 (1998) (declining to "indulge in [] guesswork" based on the defendant's speculation that the remarks of two prospective jurors during voir dire tainted the entire panel); *State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006) (holding that the defendant may not rely on speculation unsupported by the record to show prejudice).

**¶17**　　　　As another instance of purported misconduct, Lincourt refers to the prosecutor's questioning of Deputy Deets. Deputy Deets testified "generally about drug trafficking" in Navajo County; he was not involved in the investigation conducted in this case. Lincourt argues the prosecutor improperly elicited drug courier profile testimony from Deputy Deets and again committed misconduct by referring to the testimony in closing argument as substantive evidence of guilt.

**¶18**　　　　Lincourt specifically challenges the following testimony:

> In the local areas we tend to see people traveling late at night, early [] in the morning, while it's still dark, due to the lack of manpower with our deputies. Our local people know exactly what our shifts are, they tend to figure it out, and so they'll tend to operate when we're not on.

Referring to this testimony, the prosecutor argued in closing as follows:

> The time of day of travel is very significant. You heard Deputy Deets testify that when drugs are going to a local area,

8

often times somebody will transport the drugs at a time of day when there's going to be less law enforcement out. That differs from on I-40, where someone will transport during the day, where there's more traffic and a better likelihood of sneaking by law enforcement without getting caught. When you are going to a local area you are transporting midnight, 1:00, 2:00, 3:00 in the morning because you know there's less law enforcement out and you have a better chance.

. . . She was doing this because she wanted to get by-- get from point A to point B without being detected, and she wanted to make sure that her drugs safely arrived in Pinetop-Lakeside.

¶19 The Arizona Supreme Court has condemned the use of profile evidence as substantive evidence of guilt. *See State v. Lee*, 191 Ariz. 542, 545, ¶ 12 (1998). In *Lee*, the court described drug courier profile evidence as an "informal," "abstract," and "loose assortment of general, often contradictory, characteristics and behaviors used by police officers to explain their reasons for stopping and questioning persons about possible illegal drug activity." *Id.* at 544, ¶ 10 (citations omitted). The court noted that admission of profile evidence creates a high risk that a jury will convict a defendant "not for what he did, but for what others are doing." *Id.* at 545, ¶ 12 (quoting *State v. Cifuentes*, 171 Ariz. 257, 257 (App. 1991)).

¶20 In *Lee*, there was little evidence other than the profile to connect the defendant to the crime. *Id.* at 546, ¶ 19. In contrast, ample evidence connects Lincourt to the methamphetamine, and the challenged testimony did not create an impermissible drug courier profile. *See State v. Gonzalez*, 229 Ariz. 550, 554, ¶ 13 (App. 2012) ("Unlike drug courier profile evidence, *modus operandi* evidence is . . . properly admitted to assist the jury in understanding the *modus operandi* of a drug trafficking organization." (citation omitted)). The testimony was admissible not only to generally aid the jury in its understanding of the evidence, *see State v. Carreon*, 151 Ariz. 615, 617 (App. 1986), but to refute Lincourt's defense that she did not know the drugs were in her vehicle. Furthermore, Deputy Deets' testimony was based on his formal training and experience. When counsel lays the proper foundation, a law enforcement officer may testify regarding "the general activities and methods of street-level narcotics dealers." *Id.*

¶21 Further, once the trial court admitted the evidence, the prosecutor could address it in closing argument and urge the jury to draw

reasonable inferences and reach specific conclusions based on that evidence. *See Bible*, 175 Ariz. at 602. No misconduct occurred.

### III. Deputy Watson's Unsolicited Testimony

¶22 As Deputy Watson testified on direct examination about the traffic stop and his growing suspicions that Lincourt was engaged in illegal activity, the following colloquy with the prosecutor occurred:

> Q. Hold on, let me stop you really quick. Some of those indicators you noticed happened after she exited the vehicle; is that fair?
>
> A. Yes, yes.
>
> Q. So after you noticed all of the indicators then what did you do?
>
> A. I asked for consent to search the vehicle.
>
> Q. Okay. At some point did you pull out your dog?
>
> A. Yes, sir, I did.
>
> Q. Why did you do that?
>
> A. To conduct a free air sniff of the vehicle.

¶23 Lincourt later moved for a mistrial based on Deputy Watson's statement that he asked for consent to search Lincourt's vehicle. The trial court denied the motion, noting the jury did not hear that Lincourt refused a search. The court offered to instruct the jury not to consider Deputy Watson's remark, but Lincourt asked the court "to do nothing" to avoid emphasizing the testimony. The State also introduced into evidence a video recording of the stop captured by Deputy Watson's body camera. The video was edited to delete the deputy's request for consent to search Lincourt's vehicle.

¶24 Later in the day, sometime after Deputy Watson had completed his testimony, Juror 8 informed the trial court that, during a recess, Jurors 5 and 7 had discussed the redacted video and Deputy Watson's testimony regarding his request to search Lincourt's vehicle. The court separately questioned all the jurors about what transpired and dismissed Juror 7. Lincourt again unsuccessfully moved for a mistrial.

¶25 On appeal, Lincourt argues the court erred in denying her motions for mistrial. As for Deputy Watson's unsolicited comment regarding his request to conduct a search, Lincourt contends that, "[p]aired with the sloppy bodycam redaction, the statement and resulting inference went to the heart of the ultimate issue and impermissibly undermined [her] lack-of-knowledge defense." We reject this argument because the jury never learned that Lincourt refused Deputy Watson's request. Lincourt merely speculates that the jury concluded she had refused consent; on this record, the jury could have just as easily concluded she acquiesced. The trial court did not abuse its discretion in denying Lincourt's motions for mistrial. *See State v. Walton*, 159 Ariz. 571, 581 (1989) (recognizing the trial court has broad discretion in deciding whether to grant a mistrial), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

¶26 Asserting the trial court's removal of Juror 7 was insufficient to remove the "taint" of the improper discussion that juror had with Juror 5 before deliberations, Lincourt argues the trial court erred in denying her mistrial motion based on juror misconduct. "[J]uror misconduct warrants a new trial if the defense shows actual prejudice or if prejudice may be fairly presumed from the facts." *State v. Miller*, 178 Ariz. 555, 558 (1994) (emphasis and citation omitted). Absent an abuse of discretion, we will not reverse a trial court's decision to grant or deny a new trial based on alleged jury misconduct. *Jones*, 185 Ariz. at 484.

¶27 We find no abuse of discretion. As Lincourt concedes, the trial court questioned all the jurors individually about the discussion between two of their colleagues. All but Jurors 5 and 7 explained they either did not overhear the conversation, or if they did, they could not remember specifically what was discussed. All but Juror 7 assured the court they could remain impartial. Thus, although two of the jurors engaged in misconduct, *see* Ariz. R. Crim. P. 24.1(c)(3)(A) (providing the court may grant a new trial if one or more jurors committed misconduct by receiving evidence not admitted during trial), no apparent prejudice resulted.

IV. *Detective Davis' Testimony*

¶28 Over Lincourt's objection, Detective Davis testified that before Deputy Watson pulled Lincourt over, he, Detective Davis, began following Lincourt in Payson, where she parked in a casino parking lot for approximately thirty minutes before entering the casino. After a few minutes inside the casino, Lincourt returned to her vehicle and resumed driving toward Heber. Detective Davis followed Lincourt from the casino until Deputy Watson initiated the traffic stop.

¶29        Reiterating the basis for her objection at trial, Lincourt argues Detective Davis' testimony improperly implied Lincourt was under surveillance, a fact the trial court initially precluded in the State's case-in-chief.  Lincourt contends the probative value of the testimony was substantially outweighed by unfair prejudice.  *See* Ariz. R. Evid. 403.  We disagree.

¶30        Detective Davis testified that when he watched Lincourt at the casino, she was alone and the "sole occupant" of her vehicle.  He also testified that "nobody came from or went from [sic] the vehicle."  Thus, his observations were relevant to show Lincourt was the only person to access her vehicle shortly before Deputy Watson located the methamphetamine.  Lincourt's argument that Detective Davis' testimony improperly indicated she was under surveillance is insufficient to create reversible error.  The trial court could reasonably conclude the testimony was not unfairly prejudicial.  *See State v. Schurz*, 176 Ariz. 46, 52 (1993) (noting that unfair prejudice under Rule 403 "'means an undue tendency to suggest decision on an improper basis,' Fed. R. Evid. 403, Advisory Committee Note, such as emotion, sympathy or horror").  The court therefore did not abuse its discretion.  *See State v. Canez*, 202 Ariz. 133, 153, ¶ 61 (2002) ("Because the trial court is best situated to conduct the Rule 403 balance, we will reverse its ruling only for abuse of discretion." (citing *State v. Roscoe*, 184 Ariz. 484, 493 (1992)), *superseded on other grounds by Ariz. R. Crim. P. 16.2(b) as recognized in State v. Valenzuela*, 239 Ariz. 299, 303 n.1, ¶ 11 (2016). Moreover, given the overwhelming evidence of Lincourt's guilt, we agree with the State that any possible error in the admission of this evidence was harmless.  *See State v. Lizardi*, 234 Ariz. 501, 506, ¶ 19 (App. 2014).

*V.     Aggravating Factor*

¶31        Lincourt argues the trial court erred in using pecuniary gain as an aggravating factor.  This argument is meritless because the court imposed presumptive sentences; thus, the court did not rely on the factor at sentencing.  *See generally State v. Johnson*, 210 Ariz. 438, 441-42, ¶¶ 10-13 (App. 2005) (finding no error when the court considered an aggravating factor not found by the jury but sentenced the defendant to presumptive terms); *see also State v. Risco*, 147 Ariz. 607, 610 (App. 1985) (concluding the trial court did not err in imposing a presumptive sentence even assuming it considered an impermissible factor when the decision to mitigate or aggravate was discretionary).

### VI.  *Deprivation of Due Process*

**¶32**        Lincourt contends Deputy Watson's "misconduct" during the traffic stop and at trial "entirely deprived" her of due process, essentially repeating arguments she has otherwise made.  Thus, we do not again consider them.  To the extent Lincourt suggests Deputy Watson's actions cumulatively amounted to reversible error, she is incorrect as a matter of law.  *See, e.g., State v. Hughes*, 193 Ariz. 72, 78-79, ¶ 25 (1998) (reiterating the general rule of not recognizing cumulative error except for claims involving prosecutorial misconduct).

### VII.  *Possession of a Dangerous Drug for Sale*

**¶33**        As the State correctly notes, Lincourt's convictions for transportation of a dangerous drug for sale and possession of a dangerous drug for sale are based on the same "corpus" of methamphetamine found in her vehicle.  Under these circumstances, possession for sale is a lesser-included offense of transportation for sale, and the convictions for both offenses therefore violate double jeopardy principles.  *See State v. Eagle*, 196 Ariz. 27, 31-32, ¶ 21 (App. 1998) (recognizing that double jeopardy may be implicated when "the same act or transaction" violates two distinct criminal statutes); *State v. Chabolla-Hinojosa*, 192 Ariz. 360, 363, ¶ 12 (App. 1998) ("[W]hen the charged possession for sale is incidental to the charged transportation for sale, it is a lesser-included offense, for a person cannot commit the transportation offense without necessarily committing the possession offense.").  Accordingly, we vacate the conviction for possession of a dangerous drug for sale.

### CONCLUSION

**¶34**        Lincourt's conviction for possession of a dangerous drug for sale is vacated.  Her remaining convictions and sentences are affirmed.

